IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CARL EDWARD WILLIS                                           PLAINTIFF

v.                                CASE NO. 06-2069

FRANK ATKINSON, GUARD MOULDER,
GUARD JACOB FINK, GUARD RESTINE,
CPL. PAUL, CAPT. CONGER, LT.
JACKSON, OFFICER REILLY, OFFICER DUTTON,
CRYSTAL REED, AND ANITA BASS                         DEFENDANTS

<u>REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

Carl Edward Willis (Plaintiff) filed this *pro se* civil rights action under 42 U.S.C. § 1983 on June 15, 2006. (Doc. 1). His Amended Complaint (Doc. 44) was filed on October 10, 2007. Defendants filed a Court-ordered Motion for Summary Judgment (Doc. 59), which is now pending before the Court. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), this case is referred to the undersigned by the Honorable Judge Robert Dawson for the purpose of issuing a report and recommendation on Defendants' Motion for Summary Judgment. Pursuant to this authority, the Court issues this Report and Recommendation.

**I. Background**

Plaintiff's claims stem from the time he was incarcerated in the Sebastian County Detention Center. Plaintiff alleges Defendants tampered with his legal mail, used excessive force against him, denied him medical treatment, made racial remarks and threats against him, and failed to protect him from an attack by a fellow inmate named Justin Combs. Retaliation is also claimed in the use of excessive force.

Plaintiff claims he returned to his cell after his exercise hour to find his legal mail had been

tampered with and his mail and legal forms were all over his cell floor. (Doc. 65, ¶ 8). Plaintiff states he asked why his legal matters had been gone through without his presence. (Doc. 65, ¶ 9). Defendants contend Plaintiff was yelling and screaming at the guards. Deputy Reilly told Plaintiff not to complain. Plaintiff claims Deputy Reilly hurt Plaintiff's arm when Reilly put Plaintiff against a wall. *Id.* Plaintiff further states Defendants Restine and Reilly were beating him while he was on the ground and Dutton joined them when he heard the commotion. (Doc. 65, ¶ 10). A Taser was used on Plaintiff. (Doc. 65, ¶ 11). Plaintiff states it was as he was lying flat on his stomach on the ground, not resisting. (*Id.*) Defendants argue Plaintiff was refusing to comply with the officers when the Taser was used. Plaintiff also states there was no prior warning to the Taser being used. (Doc. 65, ¶ 12). Excessive force was further allegedly used on Plaintiff when he was escorted to the front shower stall by the intake desk and Restine slammed Plaintiff's head into the concrete shower floor and into some glass which was on the floor. (Doc. 65, ¶13). Plaintiff states Restine removed the glass from his forehead, but did not allow him to go to a doctor or nurse as Plaintiff requested. It was the next day before Plaintiff received medical attention.

  Plaintiff's claims of denial of medical care stem in part from his fight with fellow inmate Justin Combs. Plaintiff states he was not given medical care until well after the incident had occurred. (Doc. 65, ¶ 15). Plaintiff also states there was a delay in receiving his medication when he arrived at the Sebastian County facility.

  As to Plaintiff's claims of racial remarks, he claims Defendants used racial slurs against him, played racist music, and allowed racial harassment from other inmates in the manner of nooses being hung over his bed and the beds of other African American inmates. (Doc. 4). Plaintiff also claims these threats and remarks should have alerted Defendants to the danger Plaintiff was in from fellow

inmate Justin Combs and Defendants should have protected him from attack.

## II. Discussion

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir.1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A. Official Capacity Claims

Plaintiff has sued Defendants in their official and personal capacity. Plaintiff's official capacity claims are tantamount to suing Sebastian County. Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Because *Monell* specifically rejected liability based solely on *respondeat superior*, *id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir.1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. *Id.*

Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell,* 436 U.S. at 690-91. The Eighth Circuit has upheld the grant of summary judgment because a plaintiff

failed to plead that the defendant "had a policy or custom of false arrests or malicious prosecution." *Sanders v. Sears, Roebuck & Co.*, 984 F.3d 972, 976 (8th Cir. 1993).

Plaintiff states there was a policy or custom which caused his rights to be violated, however he does not articulate what he believed the policy or custom to be. Plaintiff indicated he would need an attorney to resolve the issue, but it is unclear how access to additional legal material or an attorney would assist Plaintiff in articulating Sebastian County's policy or custom he believed to be unconstitutional. Plaintiff has previously requested counsel (Docs. 24, 27, 29) and those motions were denied. (Doc. 31). Thus, Defendants' Motion for Summary Judgment regarding Plaintiff's official capacity claims should be **GRANTED**.

**B. Individual Capacity Claims**

<u>1. Tampering with Legal Mail</u>

Plaintiff claims his legal mail was opened outside his presence. The Eighth Circuit has interpreted the Supreme Court's decision in *Wolff v. McDonnell*, 418 U.S. 539,. 575-77 (1974) to stand for the proposition that mail that is legal, privileged mail, can not be opened for inspection outside the inmate's presence. *See Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir.1981) ("Privileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner."). *See also Powells v. Minnehaha County Sheriff Dep't,* 198 F.3d 711, 712 (8th Cir.1999) (allegation that prison officials opened legal mail outside of inmate's presence is sufficient to state a constitutional claim); *Thongvanh v. Thalacker,* 17 F.3d 256, 258-59 (8th Cir.1994) (prison officials' duty to maintain security within prison does not extend to reading inmates' legal mail). However, the claim is essentially an access to the courts claim, and as such, an inmate who alleges a violation is required to show actual injury. *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

Here, Plaintiff asserted his legal mail was opened without his presence. He does not deny this search was done in response to additional medication being found in Plaintiff's cell and being attributed to him. Thus, it appears the search was pursuant to the Defendants interest in discovering and removing contraband from the facility. Additionally, Plaintiff has only asserted his injury was from exposure of the information to other inmates who resided in his cell and could have read the documents which were strewn around his cell. The Court does not find this meets the actual injury requirement. Therefore, it is my recommendation Defendants' Motion for Summary Judgment regarding Plaintiff's claims he was denied access to the courts due to the opening of his legal mail outside of his presence be GRANTED.

    2.  Excessive Force

Plaintiff claims excessive force was used against him when he complained about the opening of his legal mail outside of his presence. The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers, regardless of whether an inmate suffers serious injury as a result. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). However, " Section 1983 is intended to remedy egregious conduct, and not every assault or battery which violates state law will create liability under it. *Askew v. Millard,* 191 F.3d 953, 958 (8th Cir.1999) (citing *Harberthur v. City of Raymore,* 119 F.3d 720, 723 (8th Cir.1997)). Officers do not violate the Eighth Amendment when they use force reasonably "in a good-faith effort to maintain or restore discipline." *Hudson,* 503 U.S. at 9. In excessive force cases, it must be "determined whether the force was applied 'in a good faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm.' " *Estate of Davis v. Delo,* 115 F.3d 1388, 1394 (8th Cir.1997) (quoting *Hudson,* 503 U.S. at 6). Factors for consideration in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need

and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. *Hudson,* 503 U.S. at 7.

Clearly issues of fact remain regarding Plaintiff's claim for excessive force. According to Plaintiff's allegations as recounted in the background section above, he was complying with orders, not receiving orders, and/or not resisting when his arm was taken behind him, when he was placed on the floor, when he was Tased, and when his head was injured in the shower stall. Defendants contend Plaintiff was resisting, yelling, failing to comply with clear orders, and creating a hazzard and disturbance. Thus, an issue exists at to whether the use of force was excessive or reasonable. It is my recommendation that Summary Judgment be DENIED regarding Plaintiff's excessive force claims.

### 3. Denial of Medical Treatment

Plaintiff claims medications were taken from him and delayed to him. Plaintiff does not state which Defendant took his medications. Additionally, he indicates he did not receive medical care after he was injured by fellow inmate and after he was involved in an altercation with jail officials.[1]

Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). The Eighth Amendment's "deliberate indifference" standard of review regarding conditions of confinement and claims of denial of medical care is the same for both pretrial detainees as well as convicted prisoners. *See, e.g., Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994); *Farmer v. Bernnan*, 511 U.S. 825 (1994). "Deliberate indifference" encompasses both that the official knows of and disregards

---

[1] Plaintiff also appears to state he did not receive medical care after he attempted suicide, however that allegation was only made in his response to the Defendants' Motion for Summary Judgment and is not before the Court.

and excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 825-26. The official must be (1) aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official must also draw the inference. *Id*.

Deliberate indifference to medical care includes intention interference with prescribed treatment. *See Estelle*, 429 U.S. at 104-05; *see also Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment or by prison doctors who fail to respond to prisoner's serious medical needs."). Mere allegation on part of prisoner, unsupported by medical evidence, as to treatment he allegedly required is not sufficient to prevent entry of summary judgment in Section 1983 action arising from prison officials' failure to provide him with such treatment. *Crooks v. Nix,* 872 F.2d 800 (8th Cir. 1989).

As to Plaintiff's claim he was denied medications, his Amended Complaint only makes a conclusory reference to this incident. However, the record (Doc. 23, Ex 3) shows that Plaintiff was taken into the Sebastian County Detention Center on November 23, 2005. On November 27, 2005 there was a Complaint by Plaintiff, requesting to receive his medications which came with him from the Arkansas Department of Corrections. This is the only grievance in the record regarding missed medication. A report dated November 28, 2005, the day after his Complaint, shows Tylenol was requested and given out. Another report dated December 15, 2005 states Plaintiff had complained to the Captain about not receiving his medications. Plaintiff had come in with Tylenol. The Nurse noted on the report that a bubble pack was found and a new med card was made for the Plaintiff's medication.

The Court assumes the above referenced time frame regarding Plaintiff's medications is the one at issue. Clearly, the deliberate indifference standard can not be met. The record shows

Plaintiff's complaint was met the day after he complained. While the situation did not appear to be completely resolved until a few weeks later on December 15, there is no evidence before the Court that the missed medication was due to an intentional and knowledgeable withholding of medication from Plaintiff. To the contrary, the evidence in the record before the Court demonstrates that when the Defendants had knowledge of Plaintiff's missed medications, they worked quickly to remedy the oversight. For those reasons, it is my recommendation that Defendants' Motion for Summary Judgment regarding Plaintiff's claims of missed medication be GRANTED.

Beyond the issue of missed medications, Plaintiff has also alleged he was denied medical treatment after he was injured by a fellow inmate and after he was involved in an incident, which included use of a Taser, with jail personnel. In regard to the injury he received after Plaintiff's incident with fellow inmate Justin Combs, there is no record of any medical treatment for this injury before the Court. Plaintiff indicates he saw a nurse the day after, but was given no treatment. Likewise, in regard to the injuries Plaintiff claims he received after his altercation with jail personnel, both the Plaintiff and the record show he was taken to the nurse's station for the cut on his head. It does not appear Plaintiff received any other medical treatment or evaluation after the incident. Plaintiff claims the denial or delay in medical treatment caused his injuries to be more severe and caused him great pain. Accordingly, a genuine issue of fact exists regarding Plaintiff's claims of denial of medical treatment after the incident with fellow inmate Justin Combs, and after the incident with jail personnel. It is my recommendation that Defendants' Motion for Summary Judgment regarding Plaintiff's claims of denial of medical care following his altercations with inmate Combs and jail personnel be DENIED.

    4.  Racial Threats

Plaintiff claims racial threats were made against him by other inmates and that objectionable

music was played by jail personnel. A simple allegation that an individual prison guard used racially offensive language in dealing with a prisoner might not, by itself, state a claim under the Equal Protection Clause. Compare *Black Spotted Horse v. Else,* 767 F.2d 516, 517 (8th Cir.1985). But when the racially derogatory language is coupled with conduct infringing the prisoner's right to security of his person, an inference arises that the conduct was motivated by racial bias. *Burton v. Livingston,* 791 F.2d 97, 101 n.1 (8th Cir. 1986). In this case, Plaintiff has merely alleged that offensive language was used to him and was present in music to which he was exposed. Plaintiff has made no correlation between any racial threats or comments and any of the conduct he alleges the Defendants participated in to violate his rights. Accordingly, it is my recommendation Defendants' Motion for Summary Judgment be GRANTED as to Plaintiff's claims of racial threats.

    5.  Failure to Protect Inmate.

"[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Cortes-Quinones v. Jimenez-Nettleship,* 842 F.2d 556, 558 (1st Cir. 1988) (internal quotation marks and citation omitted), *cert. denied*, 488 U.S. 823 (1988); *see also Wilson v. Seiter,* 501 U.S. 294, 303 (1991) (describing "the protection [an inmate] is afforded against other inmates" as a "conditio[n] of confinement" subject to the strictures of the Eighth Amendment); *see also Farmer v. Brennan,* 511 U.S. 825, 833(1994).

Not every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. The United States Supreme Court has held that a prison official violates the Eighth Amendment only when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). First, the deprivation alleged must be, objectively, "sufficiently serious;" a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Id.* For a claim based on a failure to

prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson,* 501 U.S. at 297(internal quotation marks, emphasis, and citations omitted). To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." *Id.* at 302-303. In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety. *Farmer*, 511 U.S. at 837. A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.*

In this case, Plaintiff only gives the conclusory allegation he was denied protection from bodily harm in his Amended Complaint. Plaintiff does not state he alerted the jail personnel to any specific threat against him. Referring to Plaintiff's original complaint, Plaintiff states inmate Combs used racial slurs against him and another African American inmate and that the slurs were increasing. Plaintiff states he did tell a guard about the slurs. However, Plaintiff does not indicate that any threats were made.

Soon thereafter, Plaintiff states Combs and possibly some other inmates created a figure of a man with a noose and hung it over a African American inmate's bed. Later, Plaintiff says the figure was in the area where he slept. Within a few days of the figure appearing in Plaintiff's area, Plaintiff alleges Combs instigated a confrontation with him and Plaintiff was injured. Plaintiff states he told the Defendants of the noose incident and of the racially-charged language prior to the incident

with inmate Combs. Plaintiff did not request protective custody or tell the guards he perceived it as any sort of threat.

I believe the record supports that threats were made against Plaintiff sufficient to put the Defendants on notice as to a concern for Plaintiff's safety. Plaintiff indicates he and one other inmate were the only African Americans in the pod. Additionally, while the threats made do not appear specific, the record contains enough indications that harm was intended to Plaintiff that a genuine issue of fact regarding the failure of Defendants to protect him. It is my recommendation that Defendants' Motion for Summary Judgment be DENIED regarding Plaintiff's claims of failure to protect him from inmate Combs.

As to Plaintiff's claims the Defendants did not protect him from sheriff's deputies, there is nothing in the record to support any deliberate indifference on behalf of the Defendants. Plaintiff does not allege he was threatened before the alleged use of excessive force or that Defendants were given any notice he could be harmed by deputies. Moreover, there is no indication the alleged behavior by the deputies was in anyway part of their training or a policy of the Sebastian County Jail. It is my recommendation that Defendants' Motion for Summary Judgment be GRANTED regarding Plaintiff's claims of failure to protect him from sheriff's deputies.

6.  Disciplinary Hearing.

Plaintiff alleges he was given a disciplinary hearing where he was unable to call any witnesses on his behalf. Plaintiff also states he signed an incident report and chose to have a hearing. However, he says the report presented at the day of the hearing was something different and was fabricated by Defendant Restine. Defendants state Plaintiff was unable to call witnesses or appeal as he had pled guilty to the incident giving rise to the discipline. There appears to be a genuine issue of fact regarding the disciplinary hearing and whether Plaintiff pled guilty or requested a hearing.

Additionally, it is unclear what Plaintiff is referring to regarding the forms he signed about his incident with the jailers. Defendants do not specifically reference these claims in their Motion for Summary Judgment. For these reasons, it is my recommendation that Summary Judgment , to the extent it addresses these claims, be DENIED regarding Plaintiff's claim of lack of due process for his disciplinary hearing.

### 7. Retaliation

Plaintiff claims the excessive force used against him by jail personnel was retaliatory to him informing the Sebastian County Sheriff and a Federal judge of threats upon his life, and he had made complaints to the jail administration regarding what he perceived to be unconstitutional actions in the jail.

"Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber,* 256 F.3d 764, 770-71 (8th Cir. 2001). Defendants have stated in their Motion for Summary Judgment that the use of force on Plaintiff was justified given his actions at the time of the altercation. However, Defendants do not address the retaliation allegation, leaving a question of fact as to the potential retaliatory nature of Defendants' alleged actions. It is my recommendation that Summary Judgment, to the extent it addresses these claims, be DENIED as to Plaintiff's claims of retaliation.

### III. Conclusion

For the reasons stated above, it is my recommendation that Defendant's Motion for Summary Judgment (Doc. 59) be **GRANTED** in part and DENIED in part. I recommend Defendants' Motion for Summary Judgment be GRANTED as to the following claims: official capacity claims, tampering with legal mail, missed medications, racial threats, failure to protect Plaintiff from jail personnel. I recommend Defendants' Motion for Summary Judgment be DENIED as to the

following claims: excessive force, denial of medical attention after altercation with inmate Combs and guards, failure to protect Plaintiff from inmate Combs, lack of due process at disciplinary hearing, and retaliation.

**The parties have ten (10) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **23rd day of February 2009.**

/s/ J. Marschewski

HON. JAMES MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE